No. 20246.

Angie W. Howard v. Avon Products, Inc.

(395 P.2d 1007)

Decided September 14, 1964.     Rehearing denied October 26, 1964.

Mr. WILLIAM R. YOUNG, Mr. THEODORE J. KUHLMAN, for plaintiff in error.

Messrs. WORMWOOD, O'DELL and WOLVINGTON, for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

WE will refer to the parties as they appeared in the trial court, where plaintiff in error was plaintiff and defendant in error was defendant.

This is a products liability case. In January of 1958, the plaintiff purchased a jar of "Strawberry Cooler," a product manufactured by the defendant and sold by one of its representatives. In one of defendant's publications the function of "Strawberry Cooler" is described as follows:

"This is a light, gentle, thorough-acting mask, delicately tinted and scented with a hint of fresh spring strawberries. It minimizes pore openings, improves texture and gives your skin the benefit of deep stimulation. You can see all results within 10 minutes."

On April 1, 1958, the plaintiff applied the "Strawberry Cooler" to her face and neck, following the instructions contained on the box. The plaintiff immediately ex-

perienced a burning sensation and immediately removed the product from her face by means of a wash cloth.

Shortly afterward the plaintiff consulted her personal physician and was treated for a three week period by him for contact dermatitis. She was thereafter referred to a Dr. Frumess, a specialist in dermatology. The immediate result of the plaintiff's use of "Strawberry Cooler" was a blistered face and neck and the permanent result is a series of small white marks on these portions of her anatomy.

In November, 1960, the plaintiff filed her complaint against the defendant, alleging that the defendant was negligent in manufacturing and placing "Strawberry Cooler" on the market; that in selling the product the defendant violated the Colorado Food and Drug Act, particularly C.R.S. '53, 66-22-3 (1960 Perm. Supp.); and that the defendant breached an implied warranty of fitness as provided by the Uniform Sales Act, C.R.S. '53, 121-1-15. Trial was to the court and after both sides had rested the court entered judgment for the defendant. From this judgment the plaintiff brings error.

In her opening brief, the plaintiff contends that the trial court erred as a matter of law in failing to find the defendant negligent and in failing to find that the defendant had breached an implied warranty of fitness. No argument is presented with respect to the defendant's alleged violation of the Colorado Food and Drug Act. For its part, the defendant makes no issue of privity, reliance on the seller's skill, or purchasing by trade name. For reasons which hereinafter appear the judgment of the trial court must be affirmed.

The basic facts in this case are undisputed. The record discloses and the trial court found that the plaintiff's dermatitis was traceable to her use of the defendant's "Strawberry Cooler," the plaintiff in no wise deviating from the instructions for such use supplied by the defendant. At the time of trial the plaintiff was thirty-five years of age and she testified that she had used cos-

metics since she had been seventeen years of age and that she had never suffered any ill effects from cosmetics prior to the unfortunate application of the "Strawberry Cooler." The plaintiff had no medical history of allergies. No warning was given by the defendant as to the possible effect of any of the ingredients contained in "Strawberry Cooler" on potential users.

The chemical composition of "Strawberry Cooler," by percentage of weight, is as follows:

| | |
|---|---|
| Bentonite | 9.3% wt. |
| Water | 84.0% wt. |
| Methyl Para Hydroxy Benzoate (Methyl Paraben) | 0.2% wt. |
| Propylene Glycol | 1.5% wt. |
| Loramine Wax | 0.3% wt. |
| Titanium Dioxide | 4.0% wt. |
| Magnesium Oxide | 0.1% wt. |
| Color | 0.15% wt. |
| Mentho | 0.03% wt. |
| Alcohol S.C. 40 | 0.30% wt. |
| Perfume | 0.30% wt. |

The purported villain in the case at bar is the third ingredient listed above, namely, methyl para hydroxy benzoate, otherwise known and hereinafter referred to as methyl paraben. The medical testimony is conclusive that the plaintiff's dermatitis was caused by an allergic reaction to methyl paraben.

At this point, comment is necessary on the nature of methyl paraben. The first witness called to the stand by the plaintiff to testify in this regard was one Emmet Powers, who was qualified as an expert in chemistry without objection by the defendant. On direct examination, Powers testified that in his opinion methyl paraben could be considered an "irritating compound" depending upon the thickness of an individual's skin, the proportions used and the nature of the solution in which the methyl paraben was placed. On cross-examination, Powers testified that in his view aspirin could also be

classified as an "irritant" depending upon the quantity used. He stated that he had no idea whatever of the amount of methyl paraben it would take to "irritate" the skin of a human being. He further testified that tests he had conducted in preparation for this suit with a compound he had produced by following the defendant's formula for "Strawberry Cooler" produced no irritation of any kind on the subjects tested.

Plaintiff's expert witness, Dr. Frumess, testified that until 1959 he had no indication that methyl paraben could cause allergic reactions but that since that time he had formed the opinion that it could cause dermatitis in some people. He further testified that the first indication appearing in medical literature of which he was aware that methyl paraben might cause harm to some skins was an article in the "Year Book of Dermatology 1960 - 1961," published in 1961. Dr. Frumess testified that since 1959, when he had first become suspicious, he had treated some twelve to fifteen identifiable cases of an allergic reaction to methyl paraben. These cases were identified by Frumess by administering methyl paraben patch tests but the record fails to disclose whether the methyl paraben was in solution and, if so, the nature of that solution and the proportion of methyl paraben to the other ingredients, if any.

The deposition of Dr. Robert Saute was introduced into evidence on behalf of the defendant. Saute is a research chemist employed by the defendant. He testified that none of the ingredients in the proportion used in "Strawberry Cooler" could be classified as an "irritant" or "sensitizer" and that when applied to the skin of a normal person such individual would suffer no ill effects from same. He further testified that the ingredients themselves could only be termed "innocuous."

Other evidence introduced on behalf of the defendant established that "Strawberry Cooler" was first placed on the market in the summer of 1956 and that prior to this marketing the defendant had conducted tests on its

employees and the wives of its executives, all with negative results. The defendant had sold 1,652,000 jars of "Strawberry Cooler" up to January, 1958, and had received only one complaint up to April, 1958. Not much is disclosed concerning this complaint other than that it was apparently of a minor nature and that that complainant did not pursue any remedy against the defendant. The record does not disclose whether this complaint had its origin in a reaction to methyl paraben. With respect to the significance of one complaint out of 1,652,000 jars sold, the following occurred on Dr. Frumess' re-cross examination:

"Q. Doctor, if you placed Strawberry Cooler on 1,652,000 people and got one minor reaction, would you say that was a product that was prone to cause allergies?

"A. No, I would not."

There is no evidence that the jar of "Strawberry Cooler" purchased and applied by the plaintiff contained any foreign substance. Evidence produced by the defendant established that the jar purchased by the plaintiff conformed identically to the formula for "Strawberry Cooler," such testing having been made possible since the plaintiff furnished the defendant with a sample from the jar prior to trial.

The problem of the allergic or unusually susceptible consumer has been termed one of the most interesting—and most difficult—questions which arises in the field of products liability. 2 Hursh, *American Law of Product Liability*, Sec. 8:1, p. 41. Generally speaking, the allergic plaintiff has found the road to financial recovery a difficult one and this is true both in negligence and in warranty. See 2 Hursh, *op. cit.*, Secs. 8:2 and 8:3, pp. 43 and 45; Freedman, *Allergy and Products Liability*, chapters 7 and 8, pp. 107 and 137; Horowitz, *Allergy of the Plaintiff as a Defense in Actions Based upon Breach of Implied Warranty of Quality*, 24 So. Cal. L. Rev. 221; Noel, *The Duty to Warn Allergic Users of Products*, 12 Vand. L. Rev. 331; Note, 46 Cornell L. Q. 465. Prosser

states the rule as follows: (Prosser, *The Assault upon the Citadel*, 69 Yale L. J. 1099, 1144):

"* * * the seller may expect, within some reasonable limits, that the product will be used by normal persons, and that he will not be held responsible when some idiosyncracy peculiar to the plaintiff makes him abnormally sensitive to a product quite harmless to ordinary people. This must be qualified to the extent that he is required to take into account allergies common to a substantial portion of the population. This in turn must be qualified by his reasonable right to assume that those who have a common allergy — for example, to strawberries — will be aware of the fact, and will take measures to protect themselves, so that a warning on the label may be all that is required of him."

We shall first consider the plaintiff's claim that the defendant breached an implied warranty of fitness. The following cases indicate that where the plaintiff's injury is caused by a peculiar reaction to the product, recovery will be denied: *Stanton v. Sears Roebuck & Co.*, 312 Ill. App. 496, 38 N.E.2d 801; *Barrett v. S. S. Kresge Co.*, 144 Pa. Super. 516, 19 A.2d 502; *Ross v. Porteous, Mitchell & Braun Co.*, 136 Me. 118, 3 A.2d 650; *Flynn v. Bedell Co. of Massachusetts*, 242 Mass. 450, 136 N.E. 252; *Bradt v. Hollaway*, 242 Mass. 446, 136 N.E. 254. In the cases cited, the injury complained of was rare and truly peculiar to the particular plaintiff, yet the language employed by the courts is broad enough in some instances, for example, *Ross v. Porteous, Mitchell & Braun Co.*, supra, to strictly limit the scope of the warranty to the "normal" consumer, without any consideration of the situation where a class of persons might be allergic to the product. But other cases hold that the protection to the buyer cannot logically be restricted to a pre-determined arbitrary class such as the "normal" buyer. *Bianchi v. Denholm & McKay Co.*, 302 Mass. 469, 19 N.E.2d 697; *Reynolds v. Sun Ray*

*Drug Co.,* 135 N.J.L. 475, 52 A.2d 666; *Zirpola v. Adam Hat Stores, Inc.,* 122 N.J.L. 21, 4 A.2d 73.

The more recent decisions support the position that a plaintiff will not be precluded from recovery under warranty solely because he is unable to qualify as a "normal" person. The principle to be drawn from these cases, and the rule which we adopt, is that the warranty extends to a plaintiff who incurs injury through an allergic reaction to a product where the plaintiff is a member of an identifiable class of persons allergic thereto. The Massachusetts experience is clearly indicative of this principle. With *Flynn v. Bedell Co. of Massachusetts,* supra, *Bradt v. Hollaway,* supra, and *Bianchi v. Denholm & McKay Co.,* supra, in the background, the Massachusetts court in *Casagrande v. F. W. Woolworth Co.,* 340 Mass. 552, 165 N.E.2d 109, held that the plaintiff has the burden of establishing that the product is injurious to a "significant number" of the population.

The identifiable class or significant number concept has, with minor semantic variations, been articulated in the following cases: *Crotty v. Shartenberg's New Haven, Inc.,* 147 Conn. 460, 162 A.2d 513 ("appreciable number"); *Magee v. Wyeth Laboratories, Inc.,* 214 Cal. App. 2d 340, 29 Cal. Rptr. 322 ("substantial portion of possible users"); *Esborg v. Bailey Drug Co.,* 61 Wash. 2d 347, 378 P.2d 298 ("reasonably foreseeable and appreciable class or number of potential users"); *Merrill v. Beaut Vues Corp.,* 10 Cir., 1956, 235 F.2d 893 ("reasonable foreseeable idiosyncracies). To go any further than the rule announced in these cases with respect to the liability of a manufacturer of a product would be to impose upon him the liability of insurer or liability without fault. This we decline to do.

In the case at bar it is clear that the plaintiff has failed to bring herself within the identifiable class or significant number concept. The implied warranty under which the plaintiff seeks to recover attached at

the time she purchased the jar of "Strawberry Cooler" in 1958 and at that point in time there was no reasonably foreseeable class of potential users who could be described as prone to suffer from an allergic reaction to methyl paraben. *Esborg v. Bailey Drug Co.,* supra; *Merrill v. Beaute Vues Corp.,* supra. The record shows that the first indication in the medical literature on the possibility of allergic reactions to methyl paraben was in 1961 and while the plaintiff's expert, Dr. Frumess, testified that he was aware of this at an earlier date, his knowledge had its inception in 1959. The testimony of the plaintiff's witness Powers was at best inconclusive and when viewed in the light most favorable to the prevailing party in the trial court and in conjunction with the testimony of the defendant's expert chemist, Saute, and indeed, that of the plaintiff's own witness, Dr. Frumess, it is of little value to the plaintiff on this writ of error. The only permissible conclusion is that the trial court committed no error in finding that the plaintiff's injury was not within the scope of the implied warranty of fitness which attached upon the purchase of the product.

We turn now to the question of negligence. The plaintiff urges that the defendant was negligent as a matter of law in failing to adequately test the product and in failing to warn potential users that some persons might be sensitive to methyl paraben.

■ It is axiomatic that the occurrence of injury following the use of a product raises no presumption of negligence in the manufacture or sale thereof. *Scientific Supply Co. v. Zelinger,* 139 Colo. 568, 341 P.2d 897. "Foreseeability of injury, usually framed as a jury issue, has become the measure of the defendant's duty." Dillard & Hart, *Product Liability: Directions for Use and the Duty to Warn,* 41 Va. L. Rev. 145, 146.

■ As has already been indicated, the defendant presented evidence of testing among its employees and the wives of its executives, all with negative results.

It was within the province of the trier of the facts, the trial court, to resolve the issue of whether this amounted to adequate testing so as to negate liability and we are not disposed to interfere with the trial court's disposition of the issue, perceiving nothing in the record compelling this Court to hold as a matter of law that the defendant was negligent in failing to adequately test its product.

We are similarly disinclined to reverse the trial court's finding on the question of defendant's duty to warn that some users of its product might be sensitive to methyl paraben. While the cases are not altogether harmonious on this aspect of products liability law, we agree with the plaintiff that a manufacturer of cosmetics or other articles designed for intimate bodily use stands as an expert and is bound to keep reasonably informed of scientific knowledge and discoveries in his field, and is deemed to possess whatever knowledge is thereby imparted. *Braun v. Roux Distributing Co.,* (Mo.) 312 S.W.2d 758. It is his duty to impart that knowledge to those who would be unable to otherwise protect themselves, and if the manufacturer knew, or by the application of reasonable developed human skill and foresight should have known that the product might cause harm to some sensitive users, liability may arise from its failure to warn of the danger. *Wright v. Carter Products, Inc.,* 2 Cir., 1957, 244 F.2d 53 (applying Massachusetts law). We do not feel, as some cases apparently hold, that the duty to warn must be predicated upon actual knowledge only, see, e.g., *Briggs v. National Industries, Inc.,* 92 Cal. App. 2d 542, 207 P.2d 110, but there must be reasonable foreseeability of the danger from the product to sensitive users. See, Tentative Draft No. 7, *Restatement, Torts 2d,* Sec. 402 A, Note j, where it is said:

"* * * Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger

is not generally known, or which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. * * *"

It is abundantly clear here that the defendant possessed no actual knowledge of the harm its product might cause to some users at the time the plaintiff purchased it, nor was the state of scientific knowledge such at that time so as to charge the defendant with knowledge; and the trial court, which was the trier of the facts, so found. Under such circumstances, the plaintiff cannot premise liability upon the defendant's failure to warn.

The other points raised by the plaintiff are deserving of but brief attention. The plaintiff insists that the trial court committed error in ruling "that the doctrine of *res ipsa loquitur* did not apply to the plaintiff's case." The doctrine of *res ipsa loquitur* serves to create a prima facie case on behalf of the plaintiff. When the defendant comes forth with evidence, as it did here, designed to overcome whatever implications of negligence that arise by reason of the doctrine of *res ipsa loquitur*, a question of fact is presented for the trier of the facts.

The plaintiff also asserts that the defendant "recommends that a patch test be given to all prospective purchasers" and that it was negligence on the part of the defendant's representative not to conduct such a test on the plaintiff. Our search of the record fails to disclose even a scintilla of evidence to support this. The only "recommendation" made by the defendant to its representative is to show a prospective purchaser how to give *herself* a patch test *if she so desires*.

The judgment is affirmed.

Mr. Justice Moore dissents.