John Herbert CUDMORE, Appellant,

v.

RICHARDSON–MERRELL, INC., et al., Appellees.

No. 16638.

Court of Civil Appeals of Texas.

Dallas.

Dec. 17, 1965.

Rehearing Denied Jan. 28, 1966.

Witts & Ewing, Wayne E. Lee, Dallas, for appellant.

Jackson, Walker, Winstead, Cantwell & Miller, D. L. Case and Jack Pew, Jr., Dallas, for appellees.

DIXON, Chief Justice.

This is a products liability case. Appellant John Herbert Cudmore sued appellee Richardson-Merrell, Inc., a pharmaceutical manufacturer, alleging that he had sustained physical injuries as a result of taking a drug manufactured by appellee. Appellee's product is known by its trade name of MER–29. Appellant's suit is based on both negligence and implied warranty.

A jury returned a verdict that appellant had suffered damage in the amount of $28,250 due to cataracts on his eyes, flaking of skin and loss of hair. It also found that the use of MER–29 was not a proximate cause of appellant's cataracts or his loss of hair, but that the use of the drug was the cause of the flaking of appellant's skin. In answering other questions the jury made these findings: during the time appellant took MER–29 the drug was not unmerchantable and was not unfit for the purpose for which it was intended; appellee had not failed to make such tests of the drug as a person of ordinary care would have made under the same or similar circumstances; at the time of appellant's purchases appellee did not know facts concerning MER–29 which the purchasing public was entitled to receive in addition to the facts which were made known to the public; appellant's cataracts were the result of "abreaction" to MER–29; the state of medical knowledge was such that appellee in the exercise of ordinary care could not have anticipated that the drug would cause cataracts in the human eye; appellant's injuries did not result from a lowering of the level of his cholesterol content; and the state of medical knowledge was such that it could not be ascertained that the lowering of the cholesterol level

might cause cataracts, loss of hair or flaking skin.

Based on the above verdict judgment was rendered that appellant take nothing by his suit.

## FACTS

The statement of facts in this case is more than 1000 pages in length. We shall undertake only a short summary of it.

In January 1960 appellant suffered a heart attack which required six weeks hospitalization. Pursuant to his physician's prescription appellant in August 1960 began taking MER–29, a new drug which had been on the market only two months. Appellant took a capsule a day until March 1961 when he discontinued taking the drug. While taking the drug he observed loss of hair and flaking of skin. In the fall of 1961 about four months after he had ceased to take the drug he began to have trouble with his vision. In June 1962 he consulted an eye doctor, who diagnosed his trouble as cataracts in both eyes. There is testimony in the record that appellant's cataracts were caused by MER–29.

It is undisputed that in 1956 MER–29 had been synthesized. Afterward it was sent to one of appellee's biological departments for tests on animals, including rats, dogs and monkeys. In 1958 and 1959 it was tested on about 2000 human patients. In December 1959 at a conference in New Jersey sponsored by appellee, doctors and scientists reported that the drug was efficacious in the reduction of cholesterol. There were no reports at the conference of cataracts having been found in any of the patients. In the fall of 1959 a number of laboratory rats developed "corneal opacity"—not cataracts—but it was not clearly shown that such condition was caused by MER–29.

Having heard from another pharmaceutical company that some of its laboratory dogs were developing cataracts, appellee began in March to renew its experiments with its own dogs. The animals were given enormous dosages of the drug. After six months some of the dogs developed cataracts. Some time thereafter some of appellee's laboratory rats also developed cataracts. In October 1961 a doctor at the Mayo Clinic reported the development of cataracts in two persons taking MER–29. Four days later a similar report came from Houston, Texas. Appellee then requested permission from the United States Food and Drug Department to issue a letter of warning which in December 1961 was sent to 230,000 physicians in the United States. On April 17, 1962 appellee addressed a general letter to physicians withdrawing MER–29 from the market.

Some time after appellant ceased to take the drug appellee requested Dr. Ronald M. Burnside, an eye specialist in Dallas, to investigate and report on the frequency of cataracts among patients using MER–29. The doctor testified that his investigation included 86 patients. Five of them had developed cataracts.

## OPINION

Special Issues Nos. 2, 4 and 6 inquired of the jury whether MER–29 was a *proximate cause* of (2) appellant's cataracts; (4) the flaking of appellant's skin; and (6) appellant's loss of hair. To Issues Nos. 2 and 6 the jury answered "No". To No. 4 the jury answered "Yes".

In connection withe the submission of the above issues the court gave the jury a definition of proximate cause. The definition includes these words: " * * * and which result or some similar result *ought reasonably have been foreseen by a person of ordinary care in an appreciable number of persons* in the light of the attending circumstances."

In his fourth, fifth, sixth and seventh points on appeal appellant charges that the court erred in including the element of foreseeability and the phrase "in an appre-

ciable number of persons" in the above definition, and should have predicated Issues Nos. 2, 4 and 6 on *producing cause*, not on *proximate cause*. Producing cause, as appellant describes it in his objections to the charge, is similar to the court's definition of proximate cause except that it omits entirely the element of foreseeability and the phrase "In an appreciable number of persons".

We think that foreseeability is properly an element in the law of implied warranty in products liability cases such as the one we have before us on this appeal.

We shall not attempt in this opinion to trace the expanding development of the law of products liability. Though much has been written on the subject and many cases involving products liability have been decided we know of no case exactly in point with the case here. This is not a case in which a foreign substance found its way into a bottled drink; it is not a case involving spoiled food; or a case having to do with a mechanical defect in the design of a piece of machinery. It is undisputed here that MER–29 was a pure unadulterated drug intended for intimate bodily use and that it was used by appellant for the very purpose for which it was intended. It consists of the active ingredient triparanol and the "vehicle" in which the triparanol is preserved.

■ In Texas the rule is well established on grounds of public policy that the law of implied warranty is applicable in products liability cases involving food for human consumption regardless of the lack of privity of contract between the manufacturer and the consumer. Jacob E. Decker & Sons, Inc. v. Capps, et al., 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942). The rule is no doubt applicable in a case involving the use of drugs such as MER–29.

■ In a case such as this the manufacturer is not charged with the burden of

absolute liability—the liability of an insurer. The mere fact that injury followed the use of MER–29 is not alone sufficient grounds for recovery. Bateman, "Products Liability Cases", 27 Tex.Bar Journal, 9, 41; Wade, "Strict Tort Liability", 19 Southwestern Law Journal, 5, 13, 15.

■ If the liability of a manufacturer stops short of that of an insurer, where then should the line be drawn marking the limit of his liability? In passing on this question it is to be remembered that this is a case in which appellee pleaded and offered evidence and the jury found that appellant's cataracts were the result of "abreaction" to MER–29—that appellant belongs to a class of people not appreciable in number who are allergic to the drug. We believe and we hold that in such cases the manufacturer of a drug intended for human consumption or intimate bodily use should be held liable on the grounds of implied warranty for injurious results only when such results or some similar results ought reasonably to have been foreseen by a person of ordinary care in an appreciable number of persons in the light of the attending circumstances. We believe our holding finds support in the following authorities: Howard v. Avon Products, Inc., 395 P.2d 1007, 1011 (Colo.1964); Esborg v. Bailey Drug Co., 61 Wash.2d 347, 378 P.2d 298 (1963); Merrill v. Beaute Vues Corp., 235 F.2d 893, 897 (10th Cir. 1956); Magee v. Wyeth Laboratories, Inc., 214 Cal.App.2d 340, 29 Cal.Rptr. 322 (Cal. 1963); Ray v. J. C. Penney Co., 274 F.2d 519 (10th Cir.1959); Ross v. Philip Morris & Co., 328 F.2d 3 (8th Cir.1964); Bennett v. Pilot Products Co., 120 Utah 474, 235 P.2d 525, 527, 26 A.L.R.2d 958 (1951); Lartigue v. R. J. Reynolds Tobacco Co., 317 F.2d 19 (5th Cir.1963). See also Bateman, "Products Liability Cases", 27 Tex.Bar Journal, 9, 41; Wade, "Strict Tort Liability of Manufacturers", 19 Southwestern Law Journal, 5, 15, 22; Keeton, "Products Liability—Liability Without Fault", 41 Tex. Law Rev. 855, 864–865, 870.

■■ For additional reasons appellant's complaint that the court erred in refusing to define "producing cause" and to submit issues predicated thereon cannot be sustained. Appellant did not plead "producing cause". He pleaded that his damages were a "proximate result" of appellee's breach of implied warranty. Further, he did not request issues on "producing cause" by presenting to the court in writing copies of the requested issues which he desired the court to submit, which request under Rule 273, Texas Rules of Civil Procedure must be presented to the court separate and apart from a party's objections to the charge. Preston State Bank v. Nat'l Union Fire Ins. Co., Tex.Civ.App., 320 S.W.2d 184; McDonald, "Texas Civil Practice", Sec. 12.34, pp. 1155–1156. Appellant's fourth, fifth, sixth and seventh points are overruled.

■ In his eighth and ninth points on appeal appellant contends that the court erred (8) in including in its definition of "unfit and unmerchantable" the qualifying phrase "after weighing utility against potential danger"; and (9) in not submitting appellant's tendered definition of "unfit and unmerchantable", which was as follows: "Unfit and unmerchantable means that inherent condition which a reasonable person would say makes the use of the product injudicious."

The challenged definition was submitted in connection with a special issue in which the jury was asked to answer whether MER–29 was unmerchantable and unfit for the purpose for which it was intended during the time it was used by appellant. The answer of the jury was that the drug was not unfit and unmerchantable.

We see no merit in appellant's contention. Appellant's own witness, Dr. Burnside, on direct examination testified " * * you have to consider the patient's gravity of disease and weigh it with the side effects of the drug; * * *." There is other testimony in the record to the same

effect. See Restatement of Torts 2nd, Sec. 402A, Comment k (Tentative draft).

■ Furthermore, appellant made only a general objection to the court's definition of "unfit and unmerchantable". He did not point out distinctly the matter to which he objected or the grounds of his objection as required by Rule 274, T.R.C.P. Appellant's eighth and ninth points are overruled.

In his tenth and eleventh points appellant asserts that the court erred in defining the term "abreaction" and in overruling appellant's objection to a special issue in which the term was used.

The court defined abreaction as follows:

" 'ABREACTION' means an usual reaction resulting from a person's unusual susceptibility to the product or intended effect of the product in question; that is, such person's reaction is different in the presence of the drug in question from that in the usual person. An abreaction is one in which an unusual result is produced by a known or theoretical mechanism of action. An abreaction is one which could not have been reasonably foreseen in an appreciable class or number of potential users prior to March 2, 1961."

The above definition was given in connection with Special Issue No. 15 which inquired whether the cataracts which appellant developed were an abreaction to MER–29. The jury answered that they were.

■ In his argument under these two points on appeal appellant says that neither allergy, idiosyncrasy or abreaction is a proper defense to an action on implied warranty; and that the above defenses are merely another attempt by appellee to introduce foreseeability into the charge. However, this argument is not embraced in a point of error or in an assignment in

the motion for new trial. Therefore the particular complaints will be considered as waived. Rule 374, T.R.C.P.

■ However, we are of the opinion that the court did not err in submitting the issue and the definition. F. W. Woolworth Co. v. Garza, Tex.Civ.App., 390 S. W.2d 90; Walstrom Optical Co. v. Miller, Tex.Civ.App., 59 S.W.2d 895; Howard v. Avon Products, Inc., Colo., 395 P.2d 1007; Bonowski v. Revlon, Incorporated, 251 Iowa 141, 100 N.W.2d 5; Grau v. Procter & Gamble Co., 324 F.2d 309; Hursh, "American Law of Products Liability", Sec. 8:2; Prosser, "The Assault on the Citidel (Strict Liability to the Consumer)", 69 Yale Law Journal, 1144–1145. Appellant's tenth and eleventh points are overruled.

In his first three points on appeal appellant says that the court erred in allowing appellee's witness George Wheatland to testify that he had been informed by an independent market research organization that a survey it had conducted showed that 460,000 persons took MER–29 during the entire time the product was on the market and that 262,000 persons took the drug prior to March 1961, the date when appellant discontinued its use; and the court erred also in overruling appellant's motion to strike said testimony. Appellant objected to the testimony on the ground that it was hearsay.

■ George Wheatland was a market research manager for appellee. The reports themselves were not introduced into evidence. Wheatland was not a participant as a member of the survey team which compiled the reports. He stated that appellee subscribed to two market surveys reporting firms. They were widely used by manufacturers. He had confidence in the accuracy of the reports.

We agree with appellant that Wheatland's testimony was hearsay and under the circumstances ought not to have been admitted into evidence. We recognize that commercial registers, lists, mortality tables and other reports prepared for and relied on by a trade or profession are often admissible as an exception to the hearsay rule. City Nat'l Bank in Wichita v. Kiel, Tex.Civ.App., 348 S.W.2d 260, 266; Purvis v. Morehead, Tex.Civ.App., 304 S.W.2d 221; Western Union Tel. Co. v. Eckhardt, Tex.Civ.App., 2 S.W.2d 505 (judgment reformed in Tex.Com.App., 11 S.W.2d 777–778); Pacific Express Co. v. Lothrop, 20 Tex.Civ.App. 339, 49 S.W. 898; San Antonio & A. P. Ry. Co. v. Morgan, Tex. Civ.App., 46 S.W. 672; Mohr v. Shultz, 86 Idaho 531, 388 P.2d 1002. But here neither the reports themselves were made available at the trial nor were the authors or any of the compilers presented as witnesses.

Nevertheless we have concluded that the error does not constitute grounds for reversing the judgment in this case. Rule 434, T.R.C.P. We so hold for these reasons:

■ (1) The testimony that 262,000 people had taken MER–29 was first admitted for the limited purpose of showing the extent of appellee's notice or knowledge. It came from another witness than Wheatland. No objection was made to its admission for that purpose. Later appellant objected to the unlimited admission from the witness Wheatland of the same information.

(2) There is evidence in the record that more that 2000 persons took the drug before it went on the market, none of whom developed cataracts, and that only one person claimed to have developed cataracts before October 1961, which covered the period when appellant was taking the drug. There is evidence also that only nine persons complained during the two years the drug was on the market.

■ (3) The burden was on appellant to show that he was part of an appreciable class of persons who might have been foreseen to have been harmed by MER–29

at the time he was taking it. Howard v. Avon Products, Inc., Colo., 395 P.2d 1007. Appellant's evidence showed that only 5 of 86 patients examined developed cataracts, and this took place after appellant had ceased to take the drug. All the issues submitted to the jury are directed only to appellee's conduct and knowledge up to March 1961, when appellant ceased to take MER–29. This was pursuant to holdings cited by appellee that appellee's duties and appellant's rights are to be measured as of the time appellant was taking the drug. Howard v. Avon Products, Inc., Colo., 395 P.2d 1007; Lartigue v. R. J. Reynolds Tobacco Co., 317 F.2d 19. No objection was made to this limitation in the period of time included in the issues.

(4) The jury found that the drug was not unfit and unmerchantable and that appellant's cataracts were the result of abreaction as that term was defined in the court's charge. The challenged testimony was not direct factual evidence on the above issues. It could have had no more than an indirect and unsubstantial bearing on said issues, consequently will not afford adequate grounds for a reversal of the judgment. Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806; State v. O'Dowd, 158 Tex. 348, 312 S.W.2d 217; Younger Bros., Inc. v. Myers, 159 Tex. 585, 324 S.W.2d 546.

(5) In answer to Special Issue No. 16 the jury answered that at the time appellant was taking MER–29 the state of medical knowledge was not such that appellee could reasonably have discovered that MER–29 might cause cataracts. This finding is not attacked by appellant. It stands wholly unchallenged on any ground. The submission of the issue was in keeping with the holding in Lartigue v. R. J. Reynolds Tobacco Co., 317 F.2d 19, 23, 35.

Appellant's first three points on appeal are overruled.

The judgment of the trial court is

Affirmed.