230 So.2d 870 (1970)
Lillie Mae THOMAS et al. Plaintiffs-Appellants,
v.
The GILLETTE COMPANY (Prom Cosmetics), Defendant-Appellee.
No. 2924.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1970.
Rehearing Denied February 4, 1970.
Dissenting Opinion February 9, 1970.
Writ Refused April 3, 1970.
Jacque B. Pucheu, Eunice, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by Timothy J. McNamara, Lafayette, for defendant-appellee.
Before FRUGÉ, HOOD, and CULPEPPER, JJ.
HOOD, Judge.
This is an action for damages instituted by Lillie Mae Thomas and her husband, Burley Thomas, against The Gillette Company, *871 manufacturer of a hair relaxant known as "Curl Free Natural Curl Relaxer." Plaintiffs allege that Lillie Mae Thomas purchased and used "Curl Free", and that her use of that product caused her to sustain injuries for which she and her husband seek to recover damages. Judgment was rendered by the trial court in favor of defendant, and plaintiffs have appealed.
The important factual issues presented are whether the preparation used by plaintiff actually caused the injuries of which she complains, whether there was a vice or defect in the product, and whether it was used properly. The principal legal issues to be determined are whether the rule of strict liability should be applied to the extent that plaintiffs are relieved of the burden of proving that defendant was negligent or that there was a vice or defect in the product, whether defendant was negligent in having failed to warn plaintiff of the possibility of an allergic reaction to the hair relaxer, and whether the doctrine of res ipsa loquitur applies.
The evidence shows that Lillie Mae Thomas purchased a package of "Curl Free" from Gibson Discount Center in Eunice, Louisiana, on or about August 10, 1966. The kit, manufactured by defendant and designed to relax and straighten curly hair, contained four separate itemsa relaxer lotion, a relaxer powder, a stabilizer powder, and a conditioner. The kit also contained detailed directions for the use of the product. These instructions, briefly, were that the purchaser was to shampoo her hair before applying any part of the product to her scalp, and that thereafter she was to apply various mixtures of the ingredients according to the directions and to rinse or comb her hair after each such application.
The instructions in the kit also contained the following information:
"If your hair is very dry, brittle, damaged or tends to break or fall easily, or if your hair is gummy, spongy, or rubbery or has an unsatisfactory feel when it is wet, then it is not in condition for any type of hair relaxing. Do not use CURL FREE Natural-Curl Relaxer at this time. Wait until the hair is in good condition. At that time, take a Strand Test to be sure your hair is in condition to be relaxed. * * *
"If your hair has been bleached, tinted or treated with any product that lightens, brightens, restores or affects its color in any way * * * then each and every time you have a CURL FREE you must take a Strand Test before giving the complete application to make sure your hair is in condition to be relaxed at the time. * * *
"If your scalp or skin is sensitive, scaly, scratched, sore or tender, do not use CURL FREE. Wait until your scalp and skin are in good condition. * * *"
Directions for performing the "Strand Test" were contained in the instructions. There was no warning in those instructions, however, that the product, used either alone or with some other product, could cause an allergic reaction to some individuals.
Although Mrs. Thomas denied that she had ever bleached or color-treated her hair, she stated that on August 14, 1966, she performed at least a portion of the strand test as a precautionary measure. She detected no adverse results from that test, so she then applied the product to her entire scalp, following the directions in the kit. Pursuant to those directions she shampooed her hair before applying the lotion, and in doing so she used Halo Shampoo, which she testified was the only cosmetic product she had used on her hair for many years. Almost immediately after using defendant's product "Curl Free", and while combing her hair, plaintiff noticed that tufts of hair began either to break off or to fall out. During the night following the application of the product, Mrs. Thomas awoke because her scalp was itching *872 and causing her discomfort. The following morning, her scalp, forehead and neck had erupted in blisters, and she had lost more hair causing small areas of baldness.
On August 15, 1966, Mrs. Thomas was examined by Dr. R. E. Landreneau, a general practitioner, who found that her hair was falling out in large clumps and that her scalp, temples and neck were red and swollen. He felt that plaintiff had suffered an "acute allergic reaction" to the hair relaxer product which she had used the previous day, and he referred her to Dr. R. H. Robinson, a dermatologist, for further evaluation and treatment.
Dr. Robinson saw Mrs. Thomas initially on August 16, and he treated her for a period of about three months thereafter. On his first examination he found that she had an eruption on the scalp, forehead, eyelids, cheeks and ears, with some extension to the neck. He diagnosed her condition as "probably contact dermatitis" or "contact eczema", and he felt that the "Curl Free" which she used was "probably the precipitating agent." He did not confirm this diagnosis by a patch test, and he stated that he did not know whether the cause of her scalp condition was a "primary sensitization reaction" or an "allergic reaction." He stated, however, that it is possible that the reaction which she experienced could have been caused by the Halo Shampoo or by the synergistic effect of using that shampoo with the hair relaxer lotion. Dr. Robinson gave plaintiff medications and a special shampoo which cured the skin problem. He has no record and no recollection of plaintiff developing any bald spots, any patchy loss of hair, or any great amount of hair loss while he was treating her. He stated that on the date of the trial "she had no evidence of any active dermatitis." He testified that none of the chemical ingredients of "Curl Free" were primary irritants; and he defined a primary irritant as a chemical which, in given strengths, would cause a reaction in any person, but that the strengths necessary to cause such a reaction would vary from one individual to another.
William S. Arnold, a chemical engineer employed by defendant as Director of Product Development and Chemical Control, was directly involved with the development and marketing of "Curl Free", and he was in general charge of the producing, testing, and marketing of that product by defendant. He gave a detailed account of the manner in which it was developed, and he described the extensive laboratory testing and test-marketing procedures which were followed by defendant in producing and marketing "Curl Free." He said that the tests performed by defendant revealed no evidence of any chemical, or combination of chemicals, in the product which would be harmful to any individual whose hair was in good condition. He acknowledged that the product could produce adverse results if used by an individual whose hair was not in good condition, or whose hair had been dyed or bleached, but he correctly pointed out that the instructions in the "Curl Free" kit contained warnings as to such adverse results.
Mr. Arnold conducted a microscopic analysis of portions of Mrs. Thomas's hair which allegedly fell out at the time she applied "Curl Free". He also examined and tested portions of her hair which were taken from her head approximately one year after her use of the product. He testified that plaintiff's hair was in "very poor condition" when the hair relaxer was used, that it showed nicks and broken and split ends, and that "about seventy percent of the fibers that we received had been cut rather than broken at the scalp end, a sharp cut, and the remaining thirty percent showed evidence of breaking." He stated that when a strand of hair falls out it normally comes out with the bulb remaining on the strand. In examining the batch of hair which plaintiff represented as having fallen out immediately after she applied the "Curl Free" lotion, he was not able to find any bulbs at all. He concluded, therefore, *873 that the hair samples which had been furnished to him had been cut or broken, that they had not fallen out from the roots, and that the relaxer lotion which plaintiff used had nothing to do with her loss of hair. In his opinion, both samples of plaintiff's hair which he examined showed evidence that her hair had been dyed or bleached, although he conceded that he was not positive of that fact.
The evidence shows that defendant has sold more than one million packages of "Curl Free" since that product was put on the market, and that during that time it has received only two complaints from purchasers or users. The relaxer is manufactured in large quantities or batches. The lotion which Mrs. Thomas used, for instance, came from a three thousand gallon batch, which produced at least forty-two thousand bottles of the finished product. The ingredients of each such batch are tested before the manufacturing process begins, and then after the lotion has been produced it is again tested before it is bottled. The evidence does not show that there was any vice or defect in the "Curl Free" which plaintiff used, or that it contained any deleterious substance.
Judgment was rendered by the trial court rejecting plaintiffs' demands. As shown in his reasons for judgment, the trial judge found that plaintiffs failed to prove that there was a vice or defect in the hair relaxer which Mrs. Thomas used, that the doctrine of res ipsa loquitur is not applicable, that plaintiff suffered an allergic reaction to the hair relaxer or to a combination of the relaxer and a shampoo, and that "the composition of the product in question has not been shown to be a primary irritant" and that "a warning is not required on a product where an injury may result from the sensitivity or allergy of a person in the use of a product which would be innocuous to normal people."
We are convinced, as was the trial judge, that the evidence fails to show any vice or defect in the "Curl Free" which was used by plaintiff. There also has been no showing of negligence on the part of defendant in manufacturing, testing and marketing that product. None of the ingredients used in making the relaxer lotion is a primary irritant, and we find that the product normally will not cause irritation or injury to the hair or scalp when used properly, except in the very rare cases where the user has a particular sensitivity or allergy to it. In this instance, more than one million packages of the hair relaxer have been sold, and only two complaints have been received. The evidence also convinces us that the scalp irritation and loss of hair which Mrs. Thomas experienced was due to an allergic reaction to the use of either the "Curl Free" lotion alone or to a combination of that lotion and Halo Shampoo.
Plaintiffs contend primarily that the rule of strict liability should be applied, and that under that rule defendant must be held liable in damages even though no negligence or fault on the part of defendant is shown. They argue that "one who manufactures and sells a product tainted with a defect of such nature as to render the product dangerous to the person or property of those who might reasonably be expected to consume or use it, is liable in tort for breach of a special responsibility to the public to see that the product is fit for its intended use, regardless of the exercise of all possible care in the manufacturing process." In support of this principle, plaintiffs cite McCauley v. Manda Brothers Provisions Co., 202 So.2d 492 (La.App. 1 Cir. 1967); Penn v. Inferno Manufacturing Corporation, 199 So.2d 210 (La.App. 1 Cir. 1967); Lartigue v. R. J. Reynolds Tobacco Company, 317 F.2d 19 (5th Cir. 1963); Meche v. Farmers Drier & Storage Company, 193 So.2d 807 (La.App. 3 Cir. 1967); and Arnold v. United States Rubber Company, 203 So.2d 764 (La.App. 3 Cir. 1967).
We do not interpret any of the cited cases as holding that liability may be enforced against the manufacturer without *874 a finding of some fault on the part of the latter. In some cases, particularly those involving food, fault on the part of the manufacturer may be inferred or implied by a showing that the product was defective, unwholesome or dangerous when used for its intended purposes and as directed, and that the manufacturer failed to warn the user of such danger. In those instances, where plaintiff seeks to infer or imply fault on the part of the manufacturer, it is essential that the plaintiff show the defect or unwholesomeness of the product as well as a failure to warn, and the law then imputes knowledge of that condition to the manufacturer. The liability of the manufacturer thus is based on a finding of fault in that he is presumed to have known of the vice or defect and failed to warn of it.
In the McCauley case, supra, for instance, involving the consumption of food, the court observed that "the plaintiff carries the burden of showing that the food consumed was unwholesome or deleterious * * *." In Penn v. Inferno Manufacturing Corporation, supra, the court found that the sight glass involved there exploded because of a defect in manufacture, that the manufacturer was presumed to know the defects and was at fault in failing to reveal them to the purchaser. And in the Arnold case, supra, we said:
"A manufacturer or seller of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design or manufacture of the article, if the injury might have been reasonably anticipated." (Emphasis added.)
The general rule was stated by our Supreme Court in Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906, 40 L.R.A., N.S., 480 (1911), as follows:
"The principle which governs in this case is that everyone ought to know the qualities, good or bad, of the things which he fabricates in the exercise of the art, craft or business of which he makes public profession, and that lack of such knowledge is imputed to him as a fault, which makes him liable to the purchasers of his fabrications for the damage resulting from the vices or defects thereof which he did not make known to them and which they were ignorant of." (Emphasis added.)
Defendant in the instant suit cannot be held to be liable under the general rule, because we have found that there were no vices or defects in the hair relaxer which plaintiff used and thus defendant was under no duty to warn purchasers of a danger. Plaintiffs argue, however, that the use of the product did cause Mrs. Thomas to have an allergic reaction to it, and that defendant was negligent in failing to warn that a reaction of that nature could occur. They contend that the failure to warn of the danger of an allergic reaction misled or entrapped Mrs. Thomas.
The issues presented here are almost identical to those which were considered in Moran v. Insurance Company of North America, 146 So.2d 4 (La.App. 4 Cir. 1962). In that case the plaintiff suffered an allergic reaction to the use of a sun tan lotion. The evidence did not show negligence on the part of the manufacturer in the preparation and sale of that lotion, nor did it show that the product contained any deleterious substance. More than four hundred thousand tubes of the lotion had been sold and no complaints had been made against the company. The manufacturer of that sun tan lotion did not warn the purchaser or user of possible toxic effects from the use thereof. The Fourth Circuit Court of Appeal, in rejecting plaintiffs' demands, quoted with approval the following excerpt from 26 A.L.R.2d, page 966:
"Although there are decisions to the contrary, generally it has been held that in an action by the buyer of a product against the seller for breach of warranty to recover damages for injuries resulting *875 from the use of the product, there is no liability upon the seller, where the buyer was allergic or unusually susceptible to injury from the product. In an action by the buyer or user of a product, based on negligence, against the manufacturer, jobber, or seller for damages resulting after the use of the product, it has been held that there is no liability upon the manufacturer, jobber, or seller, where the buyer or user was allergic or unusually susceptible to injury from the product."
The court, in the Moran case, also cited and relied on Bish v. Employers Liability Assurance Corporation, 236 F.2d 62 (5th Cir. 1956), and Bennett v. Pilot Products Co., 120 Utah 474, 235 P.2d 525, 26 A.L.R. 2d 958. In the Bish case, the court held that:
"As a corollary to these sound rules it follows that in the absence of either a danger or knowledge of danger of the use of a product, or where there might be only a remote possibility of danger, failure to warn is not negligence. Nor is a warning required as to a product where an injury results from the sensitivity or allergy of a person in the use of a product which would be innocuous to normal people. Levi v. Colgate-Palmolive Proprietary, 41 New So.W.St. 48, 58 New So.W.W.N. 63. The instruction that no warning was required was, upon the facts here shown, a proper one."
The facts in Bennett v. Pilot Products Co., supra, are similar to those presented in the instant suit. There, the plaintiff suffered an allergic reaction to a permanent wave lotion manufactured by defendant. The evidence showed that only one woman in 1,000 had suffered such a reaction. The Supreme Court of Utah, in holding that the trial court had correctly rejected plaintiff's demands, used the following language which we think is appropriate here:
"Appellant appeared to be sensitive to the mixture much the same as some people respond to strawberries,a commodity honored so frequently by the authorities in illustrating difference in liability to the allergic in contrast to the normal individual. We believe, that under the facts of this case, the trial judge strained neither common sense nor realism in concluding that appellant's ailment, being the result of an allergy, was not compensable as a matter of law. We are sympathetic with appellant and her misfortune, but cannot require the merchant to assume the role of absolute insurer against physiological idiosyncracy. To do so also would invest the elusive ordinary prudent man with a quality of foreseeability that would take him out of character completely. Every substance, including food which is daily consumed by the public, occasionally becomes anathema to him peculiarly allergic to it. To require insurability against such an unforeseeable happenstance would weaken the structure of common sense, as well as present an unreasonable burden on the channels of trade."
We find in the instant suit that the possibility of danger from an allergic reaction to "Curl Free" was so remote and unlikely that defendant was under no duty to warn purchasers or users of such a possibility. Defendant thus was not negligent or at fault in failing to include such a warning in the directions which accompanied the product.
Plaintiff contends, finally, that the doctrine of res ipsa loquitur is applicable here, that the burden thus rests on defendant to show that it was free from negligence, and that it has failed to meet that burden of proof. We find no merit to that argument.
In Morales v. Employers' Liability Assur. Corporation, 202 La. 755, 12 So.2d 804 (1943), our Supreme Court stated:
"It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room *876 for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked."
In Hanchey v. Central Louisiana Electric Company, 218 So.2d 399 (La.App. 3 Cir. 1969), this court said:
"The doctrine of res ipsa loquitur may be invoked only where the evidence warrants an inference that it was the defendant's negligence, rather than the acts of others for which defendant is not responsible, that caused the accident. It may not be invoked where, from the nature of the facts established by the record, it could reasonably be concluded that the accident was caused by the negligence of another or through the instrumentality or agency of another."
In the instant suit there are several reasonable conclusions which could be drawn as to the cause of plaintiff's scalp irritation and hair loss, other than that defendant was at fault in failing to warn of a vice or defect in the "Curl Free" which plaintiff used. One reasonable explanation is that Mrs. Thomas was unusually sensitive or allergic to that lotion, or to a combination of the hair relaxer and a shampoo, and that this rare idiosyncratic sensitivity, rather than a vice or defect in the product, was the sole cause of her scalp and hair injury. Such an explanation is not only reasonable, but we have concluded that the evidence preponderates to the effect that plaintiff's injuries were due solely to an unusual allergic reaction.
The evidence also shows that Mrs. Thomas used another product, Halo Shampoo, in connection with her use of "Curl Free." The expert dermatologist who testified on behalf of plaintiffs stated that it was possible that a combination of the shampoo and the "Curl Free" caused the injury of which Mrs. Thomas complains. It was also established by the defendant that Mrs. Thomas did not perform the strand test according to the instructions contained in the "Curl Free" kit, and it might reasonably be concluded that if she had done so, she would have been forewarned of the allergic reaction which she experienced. Since it can reasonably be concluded that plaintiff's scalp and hair injury could have been caused by circumstances not involving a defect in the hair relaxer lotion or fault on the part of defendant, there can be no inference of negligence on the part of the defendant manufacturer, and thus the doctrine of res ipsa loquitur is not applicable. See also Pilie v. National Food Stores of Louisiana, Inc., 245 La. 276, 158 So.2d 162 (1963); Talbert v. Tyler, 121 So.2d 854 (La.App. 2 Cir. 1960); James v. Childs, Division of Kroger Company, 166 So.2d 77 (La.App. 3 Cir. 1964); Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389 (1957).
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.

On Application for Rehearing
TATE, Judge (dissenting).
I respectfully dissent from the denial of rehearing.
The plaintiff purchased a package of "Curl Free", a natural curl relaxer manufactured by the defendant. The kit contained detailed directions for the use of the product. These instructions included no warning that the product, used either alone or with some other product, could cause an allergic reaction to some individuals.
After applying "Curl Free" to her hair in accordance with the directions, the plaintiff almost immediately noticed that tufts of her hair began to break off or fall *877 out. The following morning, her scalp, forehead and neck had erupted in blisters, and she had lost more hair, causing three small areas of baldness. The loss of hair and baldness was caused by a contact dermatitis resulting from an acute allergic reaction to "Curl Free". Similar maleffects would follow use by anyone with the plaintiff's allergy.
The majority affirms the dismissal because relatively few people are afflicted with the plaintiff's allergy. It holds that the manufacturer, although it knew these maleffects would flow from normal use of its product, had no duty to warn this small segment of its customers of the danger of baldness to result from use of "Curl Free" on the hair, as recommended by its advertising and directions. I respectfully disagree.

I
"In my opinion it should now be recognized that a manufacturer incurs absolute liability when an article that he has placed on the market, knowing that it is to be used without inspection, proves to have a defect that causes injury to human beings." Escola v. Coca Cola Bottling Co. of Fresno, 24 Cal.2d 453, 150 P.2d 436, 440 (1944) (Traynor concurring). With this initial judicial recognition began strict liability in products liability cases.
The policy basis for the doctrine is the fact that consumers are today helpless to protect themselves against defects in products which they purchase. The public interest in human life and safety requires that they be given maximum protection against dangerous defects in these products. The risk of injury to the consumer should be placed upon the manufacturer, because he is best able to distribute that risk among the consuming public as a cost of doing business, through product pricing and liability insurance. Prosser, Torts 673 (3d Ed.1964); Santor v. A. & M. Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305, 16 A.L.R.3d 370 (1965); Hamon v. Digliani, 148 Conn. 710, 174 A.2d 294 (1961); Escola v. Coca Cola Bottling Co. of Fresno, 24 Cal.2d 453, 150 P.2d, 436, 440 (concurring opinion); Annot., 13 A.L.R.3d 1057 (1967).
At common law, the rule of strict liability regardless of negligence developed first in the area of food products manufactured or processed for human consumption, but it has recently been extended to articles for "intimate bodily use" such as cosmetics or drugs. Restatement (Second) of Torts, Section 402A.
In food product cases, Louisiana courts have reached the same result. LeBlanc v. Louisiana Coca Cola Bottling Co., 221 La. 919, 60 So.2d 873 (1952). In these cases, liability is founded under Civil Code articles 2315 and 2316 even without a finding of intentional harm or negligence. Rather, in the case of defective food products, the law conclusively presumes the "fault" required by article 2315. Lartigue v. R. J. Reynolds Tobacco Co., 317 F.2d 19, 25-27, 30-31 (5th Cir. 1963).
There is no reason in logic to differentiate the dangers to life and health that inhere in other defective goods, and particularly defective articles intended for "intimate bodily use", from the dangers of defective food. Greenman v. Yuba Power Products, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963); Esborg v. Bailey Drug Co., 61 Wash.2d 347, 378 P.2d 298 (1963); Restatement (Second) of Torts, Section 402A.
Under the doctrine of strict liability, a plaintiff must prove that a defect in the product caused his injury, and that the defect existed when the product left the hands of the defendant. Res ipsa loquitur, since that doctrine concerns proof of negligence, has no application here. But the same conclusions may be reached on the basis of circumstantial evidence. Prosser, Torts 683-4. A product is defective if the manufacturer has reason to anticipate that danger may result from a particular use of his product, and he fails to give adequate warning of that danger. Restatement *878 (Second) of Torts, Section 402A, Comment d.

II
"If the law is to keep apace of the * * problems wrought by science and technology, it is high time for the courts to also recognize the allergic or unusually susceptible as members of a legally identifiable class, to whom the law will extend its protection in warranty and in tort, and not as isolated individuals of whom the law takes no account." Merrill v. Beaute Vues Corp., 235 F.2d 893, 899 (10th Cir. 1956) (Murrah concurring).
The allergic plaintiff has occasioned considerable difficulty in the law of products liability. 2 Harper & James, Torts 1585-6 (1956); Prosser, Torts 168-9; Annot. 26 A.L.R.2d 963 (1952). But if we put to one side strawberries, citrus fruits, eggs, and other recognized allergens among natural foods which cause mild discomforts for many people, realizing that these people are fully aware of their susceptibility and able to protect themselves against the usually trivial injury, much confusion disappears.
When we are dealing with chemicals and other synthetic products, mysteries of science to the ordinary consumer, we face serious harm from allergic reaction. An injured consumer cannot be barred from recovery merely because he is not a "normal" person. A manufacturer cannot limit the "reasonable fitness" of his product to a predetermined group of normal buyers. Howard v. Avon Products, Inc., 155 Colo. 444, 395 P.2d 1007 (1964); Crotty v. Shartensberg's-New Haven, Inc., 147 Conn. 460, 162 A.2d 513 (1960). In deciding which of these allergies are unreasonably dangerous, and therefore deserving of legal protection for the allergic consumer, we must consider the social utility of the product, the number of possible allergic users of the product, and the seriousness of the harm expected to the allergic user. Prosser, Torts 669.
The knowledge which the manufacturer might or might not have had of the danger of his product is crucial to an action based on negligence. In actions where liability is strict, it has no relevance. 2 Harper & James, Torts 1586. Yet in most of the cases denying recovery to allergic plaintiffs, recovery was denied because the defendant either had no knowledge of, or could not have foreseen, the allergic reaction. Most of these cases involve the first complaint of harm by a product. Moran v. Insurance Co. of North America, 146 So.2d 4 (La.App., 4th Cir., 1962); Bish v. Employers Liability Assur. Corp., 236 F.2d 62 (5th Cir., 1956); Merrill v. Beaute Vues Corp., 235 F.2d 893 (10th Cir. 1956); Briggs v. National Industries, 92 Cal.App. 2d 542, 207 P.2d 110 (Cal.Dist.Ct.App., 4th Dist., 1949); Howard v. Avon Products, Inc., 155 Colo. 444, 395 P.2d 1007 (1964); Bonowski v. Revlon, Inc., 251 Iowa 141, 100 N.W.2d 5 (1959); Barrett v. S. S. Kresge Co., 144 Pa.Super. 516, 19 A.2d 502 (1941). Bennett v. Pilot Products Co., 120 Utah 474, 235 P.2d 525, 26 A.L.R.2d 958 (1951), is remarkable in that, despite evidence that one person out of every 1000 is allergic to an ingredient of defendant's product, the court found no foreseeability of harm.
Foreseeability has been found where an "appreciable number" of persons are shown to be susceptible to the product. Wright v. Carter Products, 244 F.2d 53 (2d Cir. 1957); Crotty v. Shartensberg's-New Haven, Inc., 147 Conn. 460, 162 A.2d 513 (1960); Bianchi v. Denholm & McKay Co., 302 Mass. 469, 19 N.E.2d 697, 121 A.L.R. 460 (1939); Newmark v. Gimbel's, Inc., 102 N.J.Super. 279, 246 A.2d 11 (1968); Reynolds v. Sun Ray Drug Co., 135 N.J.Law 475, 52 A.2d 666 (1947); Zirpola v. Adam Hat Stores, 122 N.J.Law 21, 4 A.2d 73 (1939); Esborg v. Bailey Drug Co., 61 Wash.2d 347, 378 P.2d 298 (1963).
In applying its doctrine of "strict liability", Louisiana even in food cases has required foreseeability. Such language, *879 however inconsistent with the theory of strict liability, is used to bring the matter within the requirement of Civil Code article 2315 for fault. Lartigue v. R. J. Reynolds Tobacco Co., 317 F.2d 19 (5th Cir., 1963); Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 40 L.R.A.,N.S., 480 (1911). A cosmetics manufacturer is bound to keep reasonably informed of scientific knowledge in his field, and is presumed to know of these discoveries. If harm to an identifiable class of sensitive users, not merely to "normal" users, was or should have been foreseeable, Howard v. Avon Products, Inc., 155 Colo. 444, 395 P.2d 1007 (1964), the manufacturer has at least a duty to warn the ignorant consumer. Wright v. Carter Products, 244 F.2d 53 (2d Cir., 1957); Bish v. Employers Liability Assur. Corp., 236 F. 2d 62 (5th Cir., 1956); Gerkin v. Brown & Sehler Co., 177 Mich. 45, 143 N.W. 48, 48 L.R.A.,N.S., 224 (1913); Bennett v. Pilot Products Co., 120 Utah 474, 235 P.2d 525, 528 (1951) (concurring opinion). As stated above, failure to warn renders the product defective. Restatement (Second) of Torts, Section 402A, Comment d.

III
In the case before us, the defendant had received two prior complaints of skin irritation, allergic reaction, and falling hair resulting from the use of its product "Curl Free" prior to the plaintiff's injury. Certainly, therefore, the defendant had knowledge that the product could cause harm to an identifiable class of sensitive users.
Yet the instructions for the use of the product contained not one word of warning that the product could cause allergic reaction in some people. I think that, under the theory of strict liability, this failure to warn rendered the product defective. Restatement (Second) of Torts, Section 402A, Comment d. Even under the theory of negligence liability, the injury to plaintiff can be classified as foreseeable: she was a member of an identifiable class (the allergic) to whom, according to the actual knowledge of the manufacturer, harm would come by the use of the product. The manufacturer, by failing to warn those few persons who it knew could not apply its product without serious injury, breached the standard of care required of it.
Admitting the plaintiff's allergy, therefore, there is ample evidence to prove that the plaintiff's injury was caused by her using the defendant's product in accordance with its directions. The plaintiff's use of a commercial shampoo should not bar her recovery, or confuse the issue of causation, because she used her regular brand of shampoo according to the defendant's directions. The injury to plaintiff occurred almost immediately after the defendant's product was applied to plaintiff's hair.
That the defect existed when the product left the defendant's hands is the most reasonable inference. The product was marketed in sealed containers, supporting the inference that it had not been tampered with by intermediate handlers.
The requirements for strict liability of the manufacturer have therefore been met. In light of the seriousness of the harm that could have been foreseen to the allergic user, and considering the usefulness to society of defendant's product, I think this is a case for application of the strict liability doctrine.

IV
The majority correctly interprets the isolated intermediate Louisiana decisions under our Civil Code as holding that liability may not be enforced against a manufacturer without a finding of some fault on its part. C.C. 2315. But "fault" under the Code seems to have been limited by my brethern to wilful harm or negligence. This limitation is not innate in the Code.
In a scholarly opinion that examines both the civilian treatise and the landmark Louisiana product liability cases, Lartigue v. R. J. Reynolds Tobacco Co., 317 F.2d 19, 30-31 (5th Cir., 1963), the court states that strict liability without regard to negligence "is not inconsistent with the civilian requirement *880 of `fault.' Delictual responsibility without dolus (wilful harming) or culpa (negligent harming) is explainable in terms of presumption of fault. Stone, Tort Doctrine in Louisiana: The Concept of Fault, 27 Tul.L.Rev. 1, 14, 19 (1952). Delicts (torts) do not have to depend on negligence. In the Civil Code, as in the common law, there are a number of instances of strict delictual liability when the law conclusively presumes fault notwithstanding the fact that the party liable did not will the damage and was not personally negligent."
With great respect for my brethren of the majority, I suggest that they have narrowly construed the "fault" of our Civil Code so as incorrectly to exempt from liability those who knowingly and without warning loose products on the market which must inevitably cause damage to members of the public. Though the latter be small in number, they are nevertheless entitled to secure redress for the harm so caused them.