433 So.2d 407 (1983)
Eula BOOKER
v.
REVLON REALISTIC PROFESSIONAL PRODUCTS, INC. and Schwegmann Bros. Giant Supermarkets, Inc.
No. CA 0568.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1983.
*408 Plauche F. Villere, Jr., New Orleans, for plaintiff-appellant.
Edward N. George, III, Stassi & Rausch, New Orleans, for defendant-appellee Revlon.
Before GULOTTA, SCHOTT and CIACCIO, JJ.
SCHOTT, Judge.
This is a products liability case arising out of plaintiff's use on her hair of Revlon Permanent Creme Relaxer manufactured by defendant, Revlon Realistic Professional Products, Inc., and purchased by plaintiff from defendant, Schwegmann Brothers Giant Supermarkets, Inc. In dismissing plaintiff's suit the trial court found that plaintiff failed to carry her burden of proof. Plaintiff has appealed.
On December 1, 1979, plaintiff purchased the product and had her friend, Adele Bradstreet, apply it to her hair. A few minutes after the application plaintiff's scalp began to burn so Bradstreet rinsed plaintiff's hair with warm water and shampooed it. Later, fluids began to seep from plaintiff's scalp and it began to swell. She first saw a physician on December 7 and was hospitalized for treatment on December 12.
In dismissing plaintiff's suit the trial judge cited LoBrono v. Gene Ducote Volkswagon, Inc., 403 So.2d 723 (La.1981) for the proposition that plaintiff had the burden of proving that the product was defective, that is, unreasonably dangerous to normal use, and that plaintiff's injuries were caused by reason of the defect. He found that plaintiff failed to prove that her injury was caused by a defect in the product's manufacture and composition and that it was not unreasonably dangerous if used in accordance with the instructions accompanying the product. He specifically concluded that plaintiff's injury was the result either of misapplication of the product or an allergic reaction by plaintiff to the substance. He found further that the directions and warnings supplied by the manufacturer with the product were adequate. The record supports these findings and conclusions.
The product does contain sodium hydroxide or lye, which can cause skin and scalp burns, but which is the active ingredient necessary to straighten the hair of the user. Defendants' expert witness testified extensively about the product's composition, its development and testing and measures taken by Revlon to control the quality of the *409 product. He stated that 7,000,000 applications of the same product had been manufactured by Revlon, but only four complaints had ever been received. The box in which the product came contained the following warnings:
"WARNING: Keep away from children at all times. Use only as directed. Read directions carefully before using. If accidentally swallowed, consult a physician immediately. Discard any excess product after use. Wear gloves during use.
WARNING:
1. This product contains sodium hydroxide (lye). You must follow directions carefully to avoid skin and scalp burns, hair loss and eye injury.
2. Do not use if scalp is irritated or injured.
3. Do not use on bleached hair. Do not use on permanently colored hair which is breaking, splitting or otherwise damaged. For hair that has been permanently colored and shows no sign of damage, use only mid strength formula.
4. If you have previously relaxed your hair, relax only the new growth, as described in the directions.
5. If the relaxer causes skin or scalp irritation rinse out immediately and wash with the shampoo in the kit. If irritation persists or hair loss occurs, consult a physician.
6. If the relaxer gets into eyes, rinse immediately and consult a physician."
The package also contained special directions for application of the product to new growth which this particular application to plaintiff's hair was. These directions stated that a "preliminary strand test must be made" and a clear warning "Do not let Creme Relaxer touch scalp" was included. Under a "do's and dont's" section of the directions the need for timing was stressed and the warning "do not apply Creme Relaxer to scalp" was repeated. Finally, the directions stated that the product was to be applied 1/8" from the scalp.
Bradstreet admitted that she did not perform the strand test, did not examine plaintiff's scalp for irritation or injury prior to the application and did not use the timer. However, in all other respects she testified that she had followed the directions.
The directions and warnings, as well as the testimony of experts on both sides, make it quite clear that the product had to be used with care and strictly in accordance with the directions so as to avoid injury and that the product could be dangerous in the event that the directions and instructions were not followed. Plaintiff's burden was to prove that the product was unreasonably dangerous to normal use. Normal use would require strict compliance with the directions and warnings, and there is no evidence whatsoever that the product could or would be dangerous at all if such directions and warnings were strictly observed.
While plaintiff and Bradstreet testified that they applied the product properly, by their own admission they did not comply with the directions in every respect. Furthermore, the trial judge was in the best position to decide based on the testimony of these two ladies whether they did in fact follow the directions, and he specifically found that there may have been a misapplication, that is, they may not have put the product to normal use. Without an inspection of plaintiff's scalp before application, the scalp's pre-irritation or pre-injury was not negated. The warning flatly proscribed the product's use if the scalp was irritated or injured. Furthermore, there is no basis on which to conclude that the product did not touch plaintiff's scalp despite the testimony of Bradstreet that she applied the product in accordance with the directions. Suffice it to say that the application of the product within an eighth of an inch from the scalp would involve the possibility that the product would touch the scalp unless care were taken by the applicator. Plaintiff's burden was to prove that such care was taken and that the substance did not touch her scalp. The trial court was apparently not convinced that plaintiff proved this and neither are we, so that plaintiff failed to carry her burden of proof that she put the product to normal use.
*410 The trial judge did not find as a fact that the product was misapplied but he did conclude that it was either misapplied or that plaintiff suffered an allergic reaction to the product. As we appreciate his findings, he was clearly satisfied that proper application was her burden but he did not preclude the possibility that the problem was an allergic reaction on plaintiff's part. Based on the testimony of defendants' expert it would have to be a rare individual who would experience an allergic reaction to this particular substance with only four complaints out of seven million potential users. Unusual or rare idiosyncratic sensitivity on plaintiff's part would not provide a basis for recovery or even a requirement of a warning from the manufacturer on the product. Thomas v. Gillette Company, 230 So.2d 870 (La.App. 3rd Cir.1970) writs refused, 233 So.2d 249.
Plaintiff's contention in this court that the warnings on the package were inadequate is without merit. We are satisfied as was the trial judge that they were clear and understandable to consumers such as plaintiff, and in the final analysis it was not a deficiency in the warnings which caused plaintiff's problem but her own failure to follow those warnings.
Our ultimate conclusion that plaintiff failed to prove her case is supported by the decision of this court in Rhodes v. Max-Factor, Inc., 264 So.2d 263 (La.App. 4th Cir. 1972). There the plaintiff in circumstances quite similar to the instant case was denied recovery as in this case because of her failure to carry her burden of proof.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.