509 So.2d 826 (1987)
Willie Mae SPURLOCK
v.
COSMAIR, INC. and Chubb Group of Insurance Companies.
No. CA 86 0714.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
*827 Ben W. Lightfoot, Attorney at Law, Baton Rouge, for appellant.
J. Lynn Ponder, Attorney at Law, Amite, Wilson M. Montero, Jr., Attorney at Law, Metairie, for appellees.
Before EDWARDS, WATKINS and LeBLANC, JJ.
*828 LeBLANC, Judge.
This is a products liability case. The issue presented is whether the doctrine of res ipsa loquitor can be applied to sustain plaintiff's burden of proving that the product in question was defective, i.e., unreasonably dangerous in normal use, either in its design, composition or manufacture or that it lacked appropriate warnings.
On July 15, 1981, plaintiff, Willie Mae Spurlock, filed a suit for personal injuries against Cosmair, Inc., the manufacturer of the product which allegedly caused her injuries, and its alleged insurer, The Chubb Group of Insurance Companies. Defendants filed a joint answer denying each of the allegations of plaintiff's petition, including the allegation that Chubb was an insurer of Cosmair. Following trial on March 19, 1984, judgment was rendered in favor of plaintiff and against both defendants in the amount of $20,200.00, plus legal interest and court costs. Defendants have appealed this judgment.
Plaintiff, Willie Mae Spurlock, was the only witness to testify at trial. The substance of her testimony was as follows. On July 15, 1980, she purchased a product called L'Oreal "Look of Radiance Permanent Creme Relaxer". Subsequently, she applied it to her hair, waited eighteen minutes, in accordance with the instructions provided, and then began to rinse her hair with water. She testified that at that time she felt a burning sensation on her scalp and temples and "a whole lot" of hair, primarily at the crown and on the sides, fell out into the sink. She did not seek medical attention at that time. Although she stated that she did consult a doctor about a week later, she was unable to recall his name. In order to cover the bald spots on her head, she testified that she wore wigs from the time of this incident until approximately a month before trial, a period of over three and one-half years.
On October 14, 1981, plaintiff was examined by Dr. Robert Benson, a dermatologist. In a deposition introduced at trial, Dr. Benson stated that his examination revealed that plaintiff's scalp had some scarring which was consistent with a burn or chemical insult, and a thinning of hair due to a loss of hair follicles. He indicated that he was unable to determine the cause of plaintiff's injuries on the basis of his examination alone. In any event, the examination also revealed a significant regrowth of hair in the affected areas of the scalp, although these hairs were still quite short. At the time of the examination, Dr. Benson did not feel that plaintiff's hair loss and thinning of hair was readily apparent to a casual observer. The only other evidence presented by plaintiff were pictures of plaintiff's head and a box of L'Oreal creme relaxer with accompanying instructions.[1]
In order to recover from the manufacturer in a products liability suit, the plaintiff must prove by a preponderance of the evidence that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by the defect. Lytell v. Goodyear Tire & Rubber Co., 439 So.2d 542 (La.App. 1st Cir.1983). Defendants argue that plaintiff has failed to carry this burden of proof. We agree and, accordingly, reverse the judgment of the trial court.
In our opinion, the evidence presented by plaintiff failed to establish by a preponderance of the evidence that the product used by plaintiff was unreasonably dangerous in normal use. This evidence merely established the occurrence of an unfortunate incident resulting in discomfort and hair loss to plaintiff. However, the mere occurrence of an unusual event is not in and of itself proof of a defect. Canty v. Terrebonne Parish Police Jury, 397 So.2d 1370 (La.App. 1st Cir.), writ denied, 401 So.2d 988 (1981); Goodlow v. City of Alexandria, 407 So.2d 1305 (La.App. 3d Cir. 1981). No evidence establishing a defect in the product in question was presented. Rather, plaintiff relies on the application of the doctrine of res ipsa loquitur to establish that the product was defective. This reliance is misplaced.
The doctrine of res ipsa loquitur is merely a rule of circumstantial evidence *829 whereby negligence on the part of the defendant is inferred because the facts indicate such negligence is the most probable cause of the plaintiff's injuries. Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La. 1979); White v. C F Industries, Inc., 411 So.2d 511, 516 (La.App. 1st Cir.), writ denied, 413 So.2d 509 (1982). However, application of this doctrine is defeated if an inference that the plaintiff's injuries were due to a cause other than the defendant's negligence can be drawn as reasonably as one that they were due to such negligence. Walker, supra; Seals v. Pittman, 499 So.2d 114 (La.App. 1st Cir.1986), writ denied, 503 So.2d 15, 1021 (1987).
In view of the paucity of evidence presented to show a defect in the creme relaxer, a conclusion could reasonably be drawn that plaintiff's scalp irritation and hair loss were due to an unusual sensitivity or allergy on her part.[2] This conclusion is just as reasonable as one that plaintiff's injuries were due to a defect in the creme relaxer. Accordingly, this is not an appropriate case for the application of the doctrine of res ipsa loquitur. See, Rhodes v. Max Factor, Inc., 264 So.2d 263 (La.App. 4th Cir.1972); Thomas v. Gillette Company, 230 So.2d 870, 875 (La.App. 3d Cir.), writ refused, 255 La. 809, 233 So.2d 249 (1970).
Further, in order for a product to be considered defective, it must be shown that it is unreasonably dangerous in normal use. Lytell, supra. For a product to be considered in normal use, the user must comply with the directions and warnings provided by the manufacturer of the product. Booker v. Revlon Realistic Prof. Products, 433 So.2d 407, 409 (La.App. 4th Cir.1983). A plaintiff bears the burden of proving the product was in normal use at the time of his injury. Id. The instructions supplied with the creme relaxer used by plaintiff specifically stated that a user of this product should perform a strand test on a small section of hair before applying the relaxer. In her testimony, plaintiff failed to make any mention of giving herself a strand test and, therefore, has not shown that the product was put to normal use. If she had performed a strand test, presumably, she would have discovered her adverse reaction to the relaxer and could have avoided most of her discomfort and hair loss. Since plaintiff did not establish that the product was in normal use at the time of her injury, a finding that the creme relaxer was defective is precluded. Booker at 409.
In addition, we note another basis upon which the trial court erred in rendering judgment against the Chubb Group. In its answer to plaintiff's petition, Chubb denied plaintiff's allegation that it was Cosmair's public liability insurer. Therefore, plaintiff had the burden of proving this allegation by a preponderance of the evidence. However, no evidence was, in fact, presented on this issue. Accordingly, there was no basis upon which to render judgment against the Chubb Group.
For the above reasons, the judgment of the trial court is reversed and judgment is hereby rendered in favor of defendants, dismissing plaintiff's suit. See, Booker, supra; Rhodes, supra; Thomas, supra. All costs of appeal are to be paid by plaintiff.
REVERSED AND RENDERED.
NOTES
[1] It is unclear whether this was the actual box which was purchased by plaintiff or merely one identical to it. No objection was raised as to its admissibility.
[2] An unusual or rare sensitivity or allergy on the part of a plaintiff does not provide a basis for recovery against the manufacturer or even a requirement of a warning on the product. Booker v. Revlon Realistic Prof. Products, 433 So.2d 407 (La.App. 4th Cir.1983); Rhodes, supra.