LABORDE, Judge.
This is a products liability suit in which the plaintiff, Lilly Ardoin, sued Revlon Commissary Sales, Inc. (Revlon), alleging that a product manufactured by Revlon, used to straighten hair, is unreasonably dangerous. Plaintiff initially also sued Wal Mart, the store where she purchased the product, but that defendant was subsequently dismissed from the matter.
The plaintiff and other witnesses testified that on September 7, 1985, during the middle of the day, the product was applied to the plaintiff’s hair. Lou Hilda Gallow, the plaintiff’s daughter, applied the Revlon “perm regular” to the plaintiff’s hair, waited about twenty minutes for the perm to take effect, and then washed the cream-like product from the plaintiff’s hair. The plaintiff had used the product about every three months for the past seven years without ever incurring any problems.
The next morning the plaintiff complained of burning and itching in her eyes. After two and one-half weeks of the alleged eye problems plaintiff visited Dr. A. John Tassin on September 25, 1985. From examining her and from the history that plaintiff gave Dr. Tassin, he diagnosed plaintiff’s problem as conjunctivitis in both eyes.
Dr. Tassin prescribed a cortisone ointment to counteract the irritation and inflammation of the eyes. On direct examination, Dr. Tassin, who is a family physician, stated that the eye irritation was brought on by a chemical reaction caused by the product. He evidently assumed that the product got into the plaintiff’s eyes because on cross examination he stated that the product could not cause conjunctivitis if it did not find its way into the plaintiff’s eyes. Dr. Tassin referred the plaintiff to Dr. Graul, an ophthalmologist, who saw her on September 26, 1985.
Dr. Graul’s testimony was introduced by way of deposition. He stated that in obtaining a history from the plaintiff, the plaintiff told him that the Revlon perm had gotten into her eyes. Dr. Graul stated there was no evidence of any swelling, redness, or burns of the conjunctiva or corneas. In short, he stated there were no injuries to the plaintiff’s eyes. Dr. Graul *152 testified that he diagnosed the plaintiff's problem as a resolving chemical conjunctivitis. Based on the history given him, the Doctor felt the chemical had gotten into the plaintiffs eyes, caused irritation, but by the time she was examined, there were no objective signs of conjunctivitis. Dr. Graul advised the plaintiff to continue using the drops Dr. Tassin had prescribed, and also ’prescribed the use of artificial tears. When questioned as to the plaintiff’s reaction to the perm solution not occurring until the next morning, although it would have been in contact with the plaintiff’s eyes at midday the previous day, Dr. Graul said the length of time from the solution’s contact with the eyes until the reaction was not normal. He said that if the solution was in contact with the eyes, the reaction would have occurred much earlier.
Both doctors testified that the only other way the perm solution could get into the plaintiff’s eyes, besides dripping or splashing, was if vapors from the solution evaporated into the eyes. Dr. Graul stated that if vapors got into the plaintiff’s eyes, any adverse effect would have gone away quicker. Dr. Graul saw the plaintiff on only one occasion, the September 26, 1985 visit.
It is important to note that both the plaintiff and Ms. Gallow, the person who applied the product, clearly and positively denied that any of the product ever got into plaintiff’s eyes. Plaintiff further testified that she never told Dr. Tassin or Dr. Graul that any of the product had ever gotten in her eyes.
The defendant’s case consisted of the testimony of Mr. Marvin Goldberg, a Revlon employee responsible for the research and development of Revlon Research Center, Inc. Mr. Goldberg’s testimony revealed that the container that the product comes in clearly labels the “perm” solution or “cream relaxer,” as Mr. Goldberg identified the product. Also in the box, are labeled bottles of shampoo, conditioner, and a protective jell. Mr. Goldberg testified that the active ingredient in the relaxer, sodium hydroxide, causes curly hair to elongate. The directions and warnings, which are printed in English and Spanish, state that if any of the product comes into contact with the eyes, the eyes should be flushed, and a doctor called immediately. As far as the emission of vapors, Mr. Goldberg testified that no vapors are released by the product, as it is ninety-eight percent water. The Revlon product is thus distinguishable from products the two doctors were probably referring to that contain ammonium hydroxide, and release vapors. Further, Mr. Goldberg testified that if the product did get into the plaintiff’s eyes, the reaction of the eyes to the chemical would be instantaneous. A delayed reaction from midday on September 7, 1985, until the morning of September 8, 1985 would be totally inconsistent with the irritant from this product getting into plaintiff's eyes when it was applied. Mr. Goldberg also testified that there are no irritants to the eyes in the shampoo, conditioner, or protective jell.
The plaintiff argues that the trial court erred in dismissing the plaintiff’s suit and not finding the Revlon product unreasonably dangerous under the applicable Louisiana law. The plaintiff also alludes to claims regarding negligence by Revlon, however, no evidence introduced in the trial court pertains to such a claim, therefore only the plaintiff’s products liability claim will be addressed.
In Louisiana, a manufacturer of a product may be held liable for injuries caused by their product, without any particular act of negligence being proven, if a plaintiff shows: (1) that the product was in normal use; (2) there was a defect in the product, i.e. the product was unreasonably dangerous in that use; and (3) the plaintiff’s injuries were caused by the defect. Lanclos v. Rockwell Intern. Corp., 470 So.2d 924, 929 (La.App.3rd Cir.), writ denied, 477 So.2d 87 (La.1985). A manufacturer must also give warnings of any dangers inherent in its product’s normal use which is not within the knowledge of an ordinary user. Id. at 928.
In the case at hand, the only dangerous propensity of this product is the possibility of contact with the eyes. The *153 manufacturer has clearly warned against this danger and provided instructions of what to do if such an incident arises. Furthermore, the evidence suggests, as the trial court found in its oral reasons for judgment, that the solution never entered - the plaintiff’s eyes. The evidence also shows that vapors from the solution did not get into plaintiffs eyes. The doctors testified that one of these must occur before any conjunctivitis could occur. The evidence that supports this conclusion is: (1) the plaintiff used the product for seven years without any adverse effect, (2) the plaintiff and Ms. Gallow both testified the solution did not enter the plaintiff’s eyes, and (3) the delayed reaction experienced by the plaintiff.
The plaintiff argues that the defect in the product is the possibility of the product getting into one’s eyes and irritating them. The plaintiff used the product for seven years without getting the solution in her eyes. Considering these facts, it is clear that the normal use of the perm is not unreasonably dangerous, nor is the product defective, as it is perfectly normal for people to use this product without getting it in their eyes.
Finally, the plaintiff argues the social utility of the product is far outweighed by the risks inherent in the product’s use. Landos, supra at 929. The evidence clearly establishes that a normal use of the product produces no risk of eye irritation.
The trial court found that the plaintiff either misused the product, or more probably the plaintiff’s conjunctivitis was caused by another source, as the solution never came in contact with the plaintiff’s eyes. These factual findings will not be disturbed absent a finding of manifest error. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). Since the record clearly supports these findings by the trial court, the trial court’s judgment is affirmed at the appellant’s cost.
In answering the appeal, the appellee, Revlon Commissary Sales, Inc. has prayed for damages alleging the appeal by the appellant is frivolous. The appellee’s request for damages is denied.
AFFIRMED.