571 So.2d 866 (1990)
Lisa LEDAY, Plaintiff-Appellee,
v.
CLAIROL, INCORPORATED, Defendant-Appellant.
No. 89-620.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
*867 Chuck R. West, Mamou, for plaintiff-appellee.
Dauzat, Falgoust, Caviness & Bienvenu, Jimmy L. Dauzat, Opelousas, for defendant-appellant.
Before STOKER, LABORDE and YELVERTON, JJ.
STOKER, Judge.
This is a products liability suit by Lisa Leday to recover damages and costs for a moderate scalp irritation and loss of hair allegedly caused by application of Clairol's "Nice `N Easy" hair color kit. Plaintiff alleges that the hair color kit contains inadequate warnings as to the danger and nature of an allergic reaction to the hair dye. Clairol, Inc. defended on the basis that plaintiff misused the product in failing to conduct a patch test for the prescribed twenty-four hours. The trial judge found that the warning provided in the kit was inadequate to engage the attention of "those who will foreseeably use the product" and did not adequately convey the nature of the danger of a reaction to the hair dye. The trial judge awarded plaintiff $1000 in general damages and $430.56 for medical expenses.
Clairol, Inc. appeals the judgment, contending that the trial judge erred in finding that the warning was inadequate. Clairol, Inc. also argues that plaintiff Leday's failure to perform a patch test for twenty-four hours was misuse of the product by her; therefore, Leday was at fault in causing her injuries. Leday answered the appeal, contending the trial court erred in awarding *868 inadequate damages.[1]

FACTS
On May 1, 1986, Leday purchased and used a Clairol "Nice `N Easy" hair dye kit. Prior to full application, plaintiff conducted a patch test on the inside of her arm at her elbow for eight hours. Despite the fact that the instructions prescribed a twentyfour-hour test period, Leday decided to fully apply the hair dye to her hair after only an eight-hour test period since she had suffered no reaction in that time. Within twenty-four hours of application of the dye plaintiff suffered an allergic reaction to the dye, the symptoms of which were swelling, irritation, redness and hair loss. Leday testified that she had used the hair dye kit about five months previously, employing an eight-hour patch test at that time as she did in this case. On that occasion she did not suffer a reaction to the dye.
The box containing the "Nice `N Easy" bottle of color material included an instruction sheet. In clearly readable print, under a bold heading reading STEP ONE PREPARATION, the user was advised: "Twenty-four hours before you color your hair be sure to: read this instruction sheet all the way through [and] do the Allergy Test and Strand Test...." Two other instructions not pertinent here follow the language just quoted. Next, in bold type approximately 5/16 of an inch high, appear the words "ALLERGY TEST." The following paragraph appears under the words allegery test:
"Certain people may be allergic to foods, drugs, cosmetics or other substances usually considered harmless. Allergies can sometimes develop suddenly. You might have been non-allergic to a certain substance last week but be allergic to the same thing today. That's why you must do this test for sensitivity 24 hours before each and every hair color application. And don't forget to preview your new hair color at the same time (see Strand Test instructions)."
After this language three separate numbered paragraphs are distributed laterally across the page of instructions. Each of these three paragraphs are spaced so that they stand apart from one another. Each number appears in bold type approximately 5/16 of an inch high and appears to the side of the printed paragraph to which it applies. The numbers are prominent on the printed page, catch the eye and function to visually separate the three points presented. The first paragraph sets forth instructions for mixing the color for the allergy test and the strand test. Paragraphs two and three appear as follows:

*869 Dr. John Tassin, an expert in general medicine, testified that he treated Leday's scalp irritation and discharged her after two and one-half months. Tassin testified that Leday suffered a moderate chemical irritation, presumably from the hair dye, which caused an acute dermatitis. He prescribed cortisone lotion, antibiotics, benedryl and a shampoo to treat the dermatitis. Upon discharge on July 22, 1986, Leday's dermatitis was improved and her scalp looked good.
Dr. James Smith, an expert in dermatology, saw Leday in September 1987 and in September 1988 for a complaint of persistent hair loss. Dr. Smith testified that he had never seen permanent hair loss caused by an allergic reaction to hair dye. Dr. Tassin believed that the hair loss plaintiff suffered in 1987 and 1988 was caused by tension on her hair due to use of tight hair rollers rather than her prior allergic reaction to the hair dye. He also testified that it is very important to perform a patch test for twenty-four hours every time hair dye is used because a person may become sensitive to it at any time.

OPINION
Clairol, Inc. contends on appeal that the trial judge erred in finding that the warnings provided in the hair dye kit were inadequate to convey the nature of the danger of an allergic reaction to the hair dye product, especially to users with little education such as Leday (Leday has a seventh grade education). Clairol, Inc. also contends that Leday was at fault in failing to conduct a patch test for twenty-four hours prior to full application of the hair dye and that this failure to follow instructions constituted misuse of the product.
In Louisiana, a manufacturer of a product may be held liable for injuries caused by its product, without any particular act of negligence being proven, if a plaintiff shows by a preponderance of the evidence: (1) that the product was in normal use; (2) there was a defect in the product, i.e., the product was unreasonably dangerous in that use; and (3) the plaintiff's injuries were caused by the defect. A manufacturer must also give warnings of any danger inherent in its product's normal use which is not within the knowledge of an ordinary user. Ardoin v. Wal Mart, 525 So.2d 150 (La.App. 3d Cir.1988); Spurlock v. Cosmair, Inc., 509 So.2d 826 (La. App, 1st Cir.1987); Booker v. Revlon Realistic Professional Products, Inc., 433 So.2d 407 (La.App. 4th Cir.1983).
In order for a product to be considered defective, it must be shown that it is unreasonably dangerous in normal use. For a product to be considered in normal use, the user must comply with the directions and warnings provided by the manufacturer of the product. A plaintiff bears the burden of proving the product was in normal use at the time of his injury. Duncan v. Louisiana Power & Light Co., 532 So.2d 968 (La.App. 5th Cir.1988); Ardoin v. Wal Mart, supra; Spurlock v. Cosmair, Inc., supra; Booker v. Revlon Realistic Professional Products, Inc., supra; Rhodes v. Max Factor, Inc., 264 So.2d 263 (La.App. 4th Cir.1972); Thomas v. Gillette Company, 230 So.2d 870 (La.App. 3d Cir.), writ denied, 233 So.2d 249 (La.1970).
The determination of whether a warning is adequate depends upon a balancing of considerations including, among other factors, the severity of the danger, the likelihood that the warning will catch the attention of those who will foreseeably use the product and convey the nature of the danger to them, the intensity and the form of the warning, and the cost of improving the strength or the mode of the warning. Bloxom v. Bloxom, 512 So.2d 839 (La.1987); also, Walker v. Maybelline, 477 So.2d 1136 (La.App. 1st Cir.), writ denied, 481 So.2d 1333 (La.1986).
An essential element of a cause of action for failure to adequately warn of a product's danger is that there be some reasonable connection between the omission *870 of the manufacturer and the damage which the plaintiff has suffered. Once a plaintiff proves that the lack of an adequate warning or instruction rendered the product unreasonably dangerous, his cause in fact burden is eased by a presumption: when a manufacturer fails to give adequate warnings or instructions, a presumption arises that the user would have read and heeded such admonitions. The presumption may, however, be rebutted if the manufacturer produces contrary evidence which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances. Bloxom v. Bloxom, supra, at 850; also, Ingram v. Caterpillar Machinery Corp., 535 So.2d 723 (La.1988).
In this case, Leday failed to properly follow the instructions in the Allergy Test section which specifically warns the user against using the product if redness, burning, itching or irritation of the skin occurs in or around the elbow test area within twenty-four hours. It was established at trial that plaintiff read and understood the Allergy Test section, but that she chose to shorten the test time to eight hours. We find the warning is specific as to the symptoms of an allergic reaction. The fact that it does not specifically warn against hair loss is of little significance since proper conduct of the patch test will disclose whether or not a person is allergic to the product.
We note that the Allergy Test section stands out well in the instruction sheet and was not obscured by numerous other warnings and instructions. We fail to see how further highlighting of the Allergy Test section could have been accomplished. We fail to see how the warning could have been made more clear or emphatic. Leday did read the section and purposely chose to ignore the manufacturer's explicit instructions.[2] Such misuse of the product was the cause of plaintiff's injuries. Had plaintiff conducted the patch test for twenty-four hours, she would have discovered that she was then allergic to the product and would have known that she should not apply the product to her hair. Therefore, the trial court manifestly erred in holding Clairol, Inc. liable for Leday's injuries. We find that Leday was 100% at fault for her injuries.

CONCLUSION
For the reasons given, the judgment of the trial court is reversed and the plaintiff's action is dismissed. Costs of this appeal are assessed to plaintiff-appellee.
REVERSED.
NOTES
[1] Subsequent to trial, Clairol, Inc. discovered that Leday had filed a prior lawsuit in 1985 against Carson Products Company, the manufacturers of "Dark and Lovely" hair dye, to recover damages for injuries caused by an allergic reaction to the product. Leday had previously denied having ever used any other type of hair dye product. After the appeal was lodged Clairol, Inc. moved this court to remand the case for consideration by the trial court of this new evidence and its bearing upon the ability of Leday to understand the potential hazards associated with use of Clairol, Inc.'s product. This court deferred ruling on the motion until the trial on the merits of the case. We reverse on the merits. Accordingly, the motion to remand is moot.
[2] The following testimony (at Transcript pages 60 and 61) was given by the plaintiff, Lisa Leday, in response to questions by her counsel:

BY MR. WEST, counsel for Plaintiff:
Q. Lisa, you said that you knew you had to put the dye in it for 24 hours, but in fact put it in just for eight.
A. Yes sir.
Q. Why is this? Why didn't you put it in for 24 hours? Why did you just leave it eight hours?
A. Well, I left it eight hours cause I seen it didn't do nothing to me.